| | |
|---|---|
| PIPELINE PRODUCTIONS, INC., MICHAEL EDMONDSON, BRETT MOSIMAN, PLT, LLC, MIDWEST PRODUCTION SERVICES, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> S&A PIZZA, INC., JEFFREY "STRETCH" RUMANER, CROSSROADS LIVE, LLC, MAMMOTH, INC., JOSH FORTIER, JOSH HUNT, <br><br> Defendants. | Case No. 4:20-00130-CV-RK |

## ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Before the Court is Plaintiffs' motion for temporary restraining order and preliminary injunction. (Doc. 7.) The motion is fully briefed (Docs. 8, 29, 30, 31, 35, 49, 50, 51, 52[1]) and the Court heard oral arguments on the motion. (Doc. 56, minute entry). After careful consideration, and for the reasons set forth below, the motion for preliminary injunction is **GRANTED in part and DENIED in part**.

### Background[2]

Plaintiffs bring this action against Defendants for breach of contract, breach of fiduciary duty, unjust enrichment, tortious interference with contract, violation of various computer tampering statutes, as well as Lanham Act violations. In 2007, Pipeline Productions, Inc. ("Pipeline"), Michael Edmondson ("Edmondson"), and S&A Pizza, Inc. ("S&A") started CrossroadsKC (the "Company") (referred to the public as CrossroadsKC @ Grinders). The Company rented an outdoor music venue (the "venue") from S&A located on property owned by S&A and Jeffrey Rumaner ("Rumaner"). On April 21, 2008, Pipeline, Edmondson, and S&A

---

[1] The Court carefully considered all of the arguments and exhibits the parties submitted in their motions, responses, and supplemental briefing. *See USA Visionary Concepts, LLC v. MR Int'l, LLC*, No. 4:09-CV-00874-DGK, 2009 WL 10672094, at *5 (W.D. Mo. Nov. 17, 2009) (the Federal Rules of Evidence do not apply to preliminary injunction hearings).

[2] The Background information is derived from Plaintiff's allegations and pleadings.

entered into an Operating Agreement ("Agreement") for the Company. The members were Edmondson, Pipeline, and S&A, with Edmondson owning 14.3%, Pipeline owning 34.7%, and S&A owning a controlling 51%.

Brett Mosiman ("Mosiman") on behalf of Pipeline, managed operations of the Company, including booking, marketing, production, security, bar operations, staffing, payroll, and sponsorships. Pipeline and Edmondson allegedly invested and loaned the Company more than $900,000. S&A and Rumaner leased the property to the Company for $6,500 a month. Over the course of approximately thirteen years, Pipeline and Edmondson made several improvements to the property, paid the bills of the company, and covered shortfalls. For the thirteen years the Company operated, it hosted around forty to fifty shows each year. Then, in December 2019, S&A terminated the lease with the Company. Attempts to dissolve and wind down the Company were unsuccessful and this litigation has now ensued.

## Legal Standard

Courts in the Eighth Circuit apply the same standards to a request for a preliminary injunction and temporary restraining order. *See S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir.1989) (affirming the district court's application of the Dataphase factors to a motion for a temporary restraining order); *Jackson v. Nat'l Football League*, 802 F. Supp. 226, 229 (D. Minn. 1992). "A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant." *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011); *see also Devose v. Herrington,* 42 F.3d 470, 471 (8th Cir. 1994) ("A court issues a preliminary injunction in a lawsuit to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits."). The Eighth Circuit considers applications for preliminary injunctions based on the following factors: (1) the threat of irreparable harm to the plaintiff, (2) the state of balance between such harm and the injury that granting the injunction will inflict on other parties litigant, (3) the probability the plaintiff will succeed on the merits, and (4) the public interest. *Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). "No single factor is determinative; they must be 'balanced to determine whether they tilt towards or away' from granting the injunction." *Fambrough v. Uber Techs., Inc.*, No. 4:19-CV-0398-DGK, 2019 WL 2411442, at *1 (W.D. Mo. June 7, 2019) (citing *Noodles Development, LP. v. Ninth Street Partners, LLP*, 507 F. Supp. 2d 1030, 1034 (E.D. Mo. 2007)).

## Discussion

Plaintiffs assert S&A, along with Rumaner, Mammoth, Inc. ("Mammoth"), Josh Hunt ("Hunt"), and Josh Fortier ("Fortier") are now allegedly: (1) seeking to put on musical performances at the property; (2) using the name, trade secrets, brand, trademark, history, investments, relationships, good will, intellectual property, social media, website, domain, and/or databases of Plaintiffs and/or the Company; and (3) could be liquidating company assets. Plaintiffs seek to enjoin Defendants from doing such acts. The Court will address these requests considering the four factors outlined above.

### I. Plaintiffs have Demonstrated a Threat of Irreparable Harm

The Company owns the name CrossroadsKC @ Grinders, as well as several tangible and intangible assets such as reputation, trade secrets, intellectual property, stages, and lighting equipment. Plaintiffs allege that continued use of CrossroadsKC @ Grinders, or any substantially similar name, threatens to damage their reputation and cause confusion among the public. *Kroupa v. Nielsen*, 731 F.3d 813, 820 (8th Cir. 2013) ("damage to one's reputation is a harm that cannot be remedied by a later award of money damages, the threat of reputational harm may form the basis for preliminary injunctive relief.").

As to the Company's intangible assets, the Court will, therefore, partially grant Plaintiffs' motion, and order that the parties, including both the Defendants and Plaintiffs, are not to utilize the term "Crossroads," "Crossroads KC," or "Crossroads Live" in conjunction with the venue, their businesses, or the production of musical events until final resolution of this case or further order from the Court.

As to the Company's tangible assets, however, any injury sustained through use or sale could be fully compensated through monetary damages. As such, Plaintiffs' motion will be denied as it is related to the Company's tangible assets.

The Court further directs Plaintiffs and S&A to meet and confer regarding the winding down of the Company and the distribution of its assets.

### II. The Balance of Harms Warrants Denying Some of Plaintiffs' Requests

Initially Plaintiffs requested the Court to enjoin Defendants from holding any event at the venue. Plaintiffs also request Defendants be enjoined from using "Grinders" in the name of the venue. S&A is the owner of the venue, however, and S&A, as well as Rumaner, were using "Grinders" for several years before the Company was created. Enjoining S&A and Rumaner from

free use of their property during the pendency of this litigation would exact substantial harm on them and the other Defendants.  Therefore, Defendants may host events at the venue, but must adhere to the restrictions set forth in Section I as to utilizing the terms "Crossroads," "Crossroads KC," or "Crossroads Live" in producing, promoting, and hosting entertainment events at the venue.  This Order does not restrict the Defendants from utilizing the term "Grinders" in naming the venue or producing, promoting, and hosting events at the venue.

The Court further directs the parties to meet and confer to establish procedures to reduce confusion among the public, customers, and clients regarding the Company's status.  In particular, protocols should be established to effectively provide notice that the venue and associated events are under new management and no longer operated by the Company.

### III. The Likelihood of Success on the Merits Does not Favor Either Granting or Denying the Motion

The Court finds this factor neutral.  At this stage, all parties have made persuasive arguments regarding their probability of success.  While the Court has weighed this factor into its analysis, this factor holds neutral weight in this case.

### IV. Public Interest Warrants Partially Granting the Motion

Finally, regarding public interest, the Court finds the public interest weighs in favor of granting in part and denying in part Plaintiffs' motion.  First, in restricting the use of CrossroadsKC @ Grinders and the other intellectual property associated with the Company, the public is served by protecting intellectual property and by preventing confusion.  *See, e.g., Taylor Corp. v. Four Seasons Greetings*, LLC, 403 F.3d 958, 968 (8th Cir. 2005) (public interest in protecting intellectual property); *Anheuser-Busch, Inc. v. Balducci Pub.*, 28 F.3d 769, 776 (8th Cir. 1994) (public interest in avoiding consumer confusion).  However, public interest also favors competition, and thus Defendants should be able to host events at the venue.  *Benfield, Inc. v. Moline*, 351 F. Supp. 2d 911, 920 (D. Minn. 2004).

### V. Issuance of a Bond

Pursuant to Federal Rule of Civil Procedure 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  "[T]he amount of the bond rests within the sound discretion of the trial court."  *Richland/Wilkin Joint Powers Auth. v. United States Army Corps of Engineers*, 826 F.3d 1030, 1043 (8th Cir. 2016) (quotation and citation omitted).  Here, even though

4

Case 4:20-cv-00130-RK   Document 58   Filed 05/05/20   Page 4 of 5

Defendants have requested a bond, the Court finds a bond is not necessary at this juncture. Defendants will be able to carry on their businesses, at the same location, and S&A and Rumaner will be allowed to use the name "Grinders."  To the extent this Order affects the assets of the Company, those assets do not yet belong to any party.  Additionally, unlike most preliminary injunctions, both Plaintiffs and Defendants are being enjoined.  Finally, any financial impact is speculative at this point.  Thus, the Court will not impose a bond requirement.

## Conclusion

Accordingly, and after careful consideration, Plaintiffs' motion (Doc. 7) is **GRANTED in part and DENIED in part**.  Specifically, it is ordered that:

1. Neither Plaintiffs nor Defendants are to use the name "Crossroads," "Crossroads KC," or "Crossroads Live" in conjunction with the venue, their businesses, or the production of musical events until the final resolution of this case or further order by the Court.  However, Defendants may utilize the term "Grinders" in naming the venue or producing, promoting, and hosting events at the venue.
2. By June 1, 2020, Plaintiffs and S&A are to meet and confer to wind down the Company and distribute the assets of the Company.
3. By June 1, 2020, Plaintiffs and Defendants are to meet and confer to establish a program to provide notice that the venue and associated events are under new management and no longer operated by the Company.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED:  May 5, 2020