# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| PIPELINE PRODUCTIONS, INC., MICHAEL EDMONDSON, BRETT MOSIMAN, PLT, LLC, MIDWEST PRODUCTION SERVICES, LLC, | ) ) ) ) |
| Plaintiffs, | ) Case No. 4:20-00130-CV-RK ) ) |
| v. | ) ) |
| S&A PIZZA, INC., JEFFREY "STRETCH" RUMANER, CROSSROADS LIVE, LLC, MAMMOTH, INC., JOSH FORTIER, JOSH HUNT, | ) ) ) ) ) |
| Defendants. | ) |

## ORDER

Before the Court are Defendants Mammoth, Inc. ("Mammoth"), Jeff Fortier ("Fortier"), and Josh Hunt's ("Hunt") (collectively the "Mammoth Defendants") motions to dismiss for failure to state a claim and for lack of standing. (Docs. 36, 38.) The motions are fully briefed. (Docs. 37, 39, 57, 68, 69.) After careful consideration, and for the reasons set forth below, the motions are **GRANTED in part and DENIED in part**. Specifically, the Court will dismiss Count IX (Stored Communications Act), Count X (Computer Fraud and Abuse Act), and Count XIV (injunctive relief), but deny the motion as to all other claims.

### Background[1]

This is a business dispute involving several parties. The Plaintiffs are two individuals, Brett Mosiman ("Mosiman") and Michael Edmonson ("Edmonson") along with several other entities owned by Mosiman, most notably Pipeline Productions, Inc. ("Pipeline"). Pipeline and Edmondson are both minority members in Defendant Crossroads Live, LLC (the "Company") (known to the public as "CrossroadsKC @ Grinders"), an entity engaged in producing and operating musical events at a specific venue located in Kansas City, Missouri.

---

[1] The background facts are taken from Plaintiffs' Complaint (Doc. 1) and are accepted as true for the present motion.

In addition to the Company, the Defendants include S&A Pizza, Inc. ("S&A"), a 51% owner of the Company and an entity operated by Defendant Jeffrey "Stretch" Rumaner ("Rumaner"). The Mammoth Defendants include Mammoth, Inc., which is a concert and live event producer based in Lawrence Kansas, and owned by Fortier and Hunt. Mammoth is a competitor of Pipeline.

In 2007, Pipeline, Edmondson, and S&A started the Company and on April 21, 2008, they entered into the Operating Agreement for the Company. Mosiman on behalf of Pipeline, managed the Company's operations, including booking, marketing, production, security, bar operations, staffing, payroll, and sponsorships. Pipeline and Edmondson allegedly invested and loaned the Company more than $900,000. S&A and Rumaner owned the property on which the Company operated (the "property"), and they leased the property to the Company for $6,500 a month.

The Company enjoyed success for 13 years, primarily through CrossroadsKC @ Grinders' events. CrossroadsKC @ Grinders hosted approximately 40-50 shows per year. Then, in December 2019, S&A terminated the lease with the Company, and began working with Mammoth Defendants to produce musical events on the Property. Attempts to dissolve and wind down the Company were unsuccessful and this litigation has now ensued.

Plaintiffs bring this action alleging counts for breach of contract, breach of fiduciary duty, unjust enrichment, tortious interference with contract, violation of various computer tampering statutes, and trademark violations under the Lanham Act. The Mammoth Defendants have moved to dismiss the counts raised against them (Counts VII-XIV) for lack of standing under Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim under Rule 12(b)(6). Their motions are ready for decision.

## Legal Standard

Under Rule 12(b)(1), a party may move to dismiss "for lack of subject-matter jurisdiction." Standing is a jurisdictional question. *See Schumacher v. SC Data Ctr., Inc.*, 912 F.3d 1104, 1105 (8th Cir. 2019). Article III of the Constitution limits federal courts' jurisdiction to certain "Cases" and "Controversies." U.S. Const. Art. III, § 2. "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Fisher v. Enterprise Holdings, Inc.*, 2016 WL 4665899, *2 (E.D. Mo. Sept. 9, 2016) (quoting *Clapper v. Amnesty Int'l U.S.A.*, 133 S. Ct. 1138, 1146 (2013) (citation omitted)). "The 'irreducible constitutional minimum' of standing consists of three elements: 'The plaintiff must have (1) suffered an injury

in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Id.* (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citation omitted)). "Where a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating each element.'" *Id.* (citing *Spokeo*, 136 S.Ct. at 1547). "The elements of standing 'cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record.'" *Id.* (quoting *Owner—Operator Indep. Drivers Assoc., Inc. v. United States Dep't of Trans.*, 831 F.3d 961, 965 (8th Cir. Aug. 2, 2016)).

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wilson v. Arkansas Dept. of Human Serv.*, 850 F.3d 368, 371 (8th Cir. 2017) (internal quotation marks and citation omitted). While a complaint does not need to include detailed factual allegations, the complaint must allege more than a sheer possibility that a defendant acted unlawfully to survive a motion to dismiss. *Id.* (citation omitted). When considering a motion to dismiss for failure to state a claim, the well-pled allegations in the Complaint must be accepted as true and construed in the light most favorable to the nonmoving party. *Osahar v. U.S. Postal Service*, 263 Fed. Appx. 753, 864 (8th Cir. 2008).

Federal Courts sitting in diversity apply state substantive law. *See generally Morgantown Machine & Hydraulics of Ohio, Inc. v. American Piping Products, Inc.*, 887 F.3d 413, 415 (8th Cir. 2018) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). The parties cite Missouri law and no party argues another state's substantive law should apply. Therefore, the Court looks to Missouri substantive law to resolve the issues.

## Discussion

### I. Tortious Interference (Count VII)

To prevail on their claim of tortious interference, Plaintiffs must allege and show Mammoth Defendants (1) interfered with a contract, (2) of which they had knowledge, and (3) such interference was without justification. *See, e.g., Alternate Fuels, Inc. v. Cabanas*, 435 F.3d 855, 858 (8th Cir. 2006) (applying Missouri Law). "Under Missouri law, no liability arises for interfering with a contract or business expectancy if the action complained of was an act that the

3

defendant had a definite legal right to do without any qualification." *Healthcare Servs. of the Ozarks, Inc. v. Copeland*, 198 S.W.3d 604, 614 (Mo. banc. 2006). Likewise, "competitive conduct is not tortious simply because it happens to interfere with another party's contracts or expectancies." *Am. Red Cross v. Cmty. Blood Ctr. of the Ozarks*, 257 F.3d 859, 862 (8th Cir. 2001) (applying Missouri law).

### A. The Operating Agreement

Mammoth Defendants first argue the operating agreement permitted the parties to run competing businesses, and therefore Mammoth Defendants were justified in their actions. Plaintiffs, on the other hand, contend that while the operating agreement permitted competition among themselves, it did not permit direct competition with the Company or allow the production of musical events on the Property with a third party. The Court will not delve into a detailed interpretation or application of the operating agreement at this time.[2] Further, whether the Mammoth Defendants' actions were justified under the operating agreement is a factual question that cannot be resolved on a motion to dismiss in this case. Therefore, Mammoth Defendants' first argument does not warrant dismissal at this time.

### B. Knowledge and Interference

Second, Mammoth Defendants argue Plaintiffs pleaded no facts to suggest the Mammoth Defendants knew of the contract (the operating agreement) or any facts as to how they interfered with the contract. These arguments fail. Plaintiffs' Complaint clearly alleges the Mammoth Defendants knew of the operating agreement and worked with Rumaner to interfere with it. For instance, paragraph seventy-seven of the Complaint alleges "employees, officers or directors of Mammoth, including Fortier and/or Hunt, directly conspired with, actively worked with and encouraged S&A and Rumaner to divert the Company's and Pipeline's business, artists, clients, prospects, confidential and proprietary information, data and trade secrets away from them and to their new venture." The Complaint also alleges Rumaner sought legal counsel in 2019 about breaching the operating agreement, and then began to divert business from the Company to the new venture with Mammoth, Fortier, and Hunt. (Doc. 1, ¶¶ 70, 75.) Drawing all reasonable

---

[2] While the Court recognizes that the meaning of a contract's legal terms is a legal question, to be resolved by the Court, at this stage of the case, the parties have not fully briefed or argued how the operating agreement should be interpreted. For purposes of this motion, therefore, the Court accepts the factual matters alleged in the Complaint as true as to the operating agreement.

4

inferences from these alleged facts, the Complaint sufficiently alleges the Mammoth Defendants knew of the contract and intentionally interfered with it.

### C. The Absence of Justification

Finally, Mammoth Defendants argue Plaintiffs have not sufficiently pleaded an absence of justification. Plaintiffs allege that Mammoth Defendants specifically timed their actions to "destroy the ability of Pipeline, Mosiman, and Edmondson to recover and/or open a new music venue." (Doc. 1, ¶ 112.) "If the alleged wrongdoer's conduct is directed solely to the satisfaction of spite or ill will and not in the advancement of his competitive interests over his competitor, the person harmed, he is not exercising and is not entitled to invoke his privileges as a competitor." *Downey v. United Weatherproofing*, 253 S.W.2d 976, 982 (Mo. 1953). Because Plaintiffs have pleaded that Mammoth Defendants acted with ill will, Plaintiffs have sufficiently pleaded absence of justification. Therefore, the Court will deny Mammoth Defendants' motion to dismiss Count VII.

## II. Violation of the Stored Communications Act (Count IX)

Mammoth Defendants argue Count IX should be dismissed for lack of standing and for failure to state a claim. While the factual allegations in the Complaint, accepted as true, establish standing for Count IX, the Court finds Plaintiffs failed to state a claim.

To establish a claim under the Stored Communications Act ("SCA"), Plaintiffs must show someone "(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage." *Anzaldua v. Ne. Ambulance & Fire Prot. Dist.*, 793 F.3d 822, 838 (8th Cir. 2015) (quoting 18 U.S.C. § 2701). Here, Plaintiffs allege Defendants intentionally gained unauthorized access to websites and social media accounts and took confidential, proprietary, and other communications. (Doc. 1, ¶¶ 168-69.)

### A. Provider of Electronic Communication Services

Mammoth Defendants first argue Plaintiffs have failed to plead they intentionally accessed a facility through which "electronic communication service" is provided. The SCA defines electronic communication services as "any service which provides the users thereof the ability to send or receive wire or electronic communications." *See* 18 U.S.C. § 2711(1) (SCA adopting definitions in 18 U.S.C. § 2510); 18 U.S.C. § 2510(15). "In construing this definition, courts have

5

distinguished those entities that sell access to the internet from those that sell goods or services on the internet or otherwise make use of internet services to conduct their day to day business activities." *Priority Payment Sys., LLC v. Intrend Software Sols.*, No. 1:15-CV-04140-AT, 2016 WL 8809877, at *6 (N.D. Ga. Nov. 28, 2016) (citing cases). Plaintiffs have failed to sufficiently plead they are a provider of electronic communications services. As such, Plaintiffs failed to state a claim under the SCA. *Id.*; *Walsh Bishop Assocs., Inc. v. O'Brien*, No. CIV. 11-2673 DSD/AJB, 2012 WL 669069, at *5 (D. Minn. Feb. 28, 2012) ("As an initial matter, the court notes that this claim fails because Walsh Bishop is not a provider of 'electronic communication service' as defined by the [SCA]."); *Combier v. Portelos*, No. 17-CV-2239 (MKB), 2018 WL 3302182, at *12 (E.D.N.Y. July 5, 2018), report and recommendation adopted, No. 17CV2239MKBRLM, 2018 WL 4678577 (E.D.N.Y. Sept. 29, 2018), aff'd, 788 F. App'x 774 (2d Cir. 2019) ("Generally, the definition of "electronic communication service" is limited to Internet service providers . . . that is, telecommunication companies that carry Internet traffic and electronic bulletin boards.").

### B. Obtain, Alter, or Prevent Unauthorized Access to a Wire or Electronic Communication

Second, Mammoth Defendants argue Plaintiffs do not allege that any Defendant accessed anything to "obtain[], alter[], or prevent[] authorized access to a wire or electronic communication while it is in electronic storage." 18 U.S.C. § 2701. Plaintiffs conclusorily assert that Mammoth Defendants "obtained, altered or prevented authorized access . . . to social networks and websites."[3] (Doc. 1, ¶ 172.) Even assuming the allegations were factually sufficient, social networks and websites are not electronic communications in electronic storage. Electronic storage is defined as, "(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17); *see also In re Doubleclick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 512 (S.D.N.Y. 2001) ("[The SCA] only protects electronic communications stored 'for a limited time' in the 'middle' of a transmission, i.e. when an electronic communication service temporarily stores

---

[3] It should be noted that Plaintiffs also argue 18 U.S.C. § 2701(a) is disjunctive and the obtain, alter, or prevent authorized access requirement only applies to 18 U.S.C. § 2701(a)(2). While the resolution of this issue is not dispositive here, the Court believes the obtain, alter, or prevent authorized access language applies both to (1) and (2) of § 2701 (a).

6

a communication while waiting to deliver it."). Therefore, Plaintiffs fail to state a claim under the SCA, and the Court will grant Mammoth Defendants' motion to dismiss Count IX.

### III.     Computer Fraud and Abuse Act (Count X)

Pursuant to 18 U.S.C. § 1030(a)(4), a violation of the Computer Fraud and Abuse Act ("CFAA") occurs when someone

> knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period.

Plaintiffs' declare that all Defendants except Crossroads Live violated the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, by accessing one or more of Pipeline's computers, either without authorization or by exceeding authorization, and thereby misappropriated information belonging to Pipeline.

Plaintiffs' Complaint does nothing more than provide bare, conclusory allegations, which amount to mere recitation of the elements outlined in § 1030(a)(4). *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (holding threadbare recitals of the elements of a cause of action do not suffice to state a claim.); *see also Curran v. Mark Zinnamosca & Assocs.*, 1:12-CV-750, 2014 WL 271634, at *6 (M.D. Pa. Jan. 23, 2014) (dismissing CFAA claim that was "nothing more than" a "formulaic recitation of the elements" of unauthorized access or exceeding authorized access). Plaintiffs fail to allege any meaningful facts in the Complaint to state a claim under Count X.

Plaintiffs cite *H & R Block E. Enters. v. J & M Sec., LLC* to argue they sufficiently pleaded loss. No. 05-1056-CV-W-DW, 2006 U.S. Dist. LEXIS 26690, at *11 (W.D. Mo. Apr. 24, 2006). However, even assuming Plaintiffs sufficiently pleaded loss, they have not sufficiently pleaded the other elements under 18 U.S.C. § 1030(a)(4). Therefore, the Court will grant Mammoth Defendants' motion to dismiss Count X.

### IV.     Violation of the Missouri Computer Tampering Act (Count XI)

Pursuant to Mo. Rev. Stat. Section 537.525, "the owner or lessee of the computer system, computer network, computer program, computer service or data may bring a civil action against any person who violates sections 569.095 to 569.099." Under Mo. Rev. Stat. Section 569.095,

> A person commits the offense of tampering with computer data if he or she knowingly and without authorization or without reasonable grounds to believe that he has such authorization:
>
> (1) Modifies or destroys data or programs residing or existing internal to a computer, computer system, or computer network; or
>
> (2) Modifies or destroys data or programs or supporting documentation residing or existing external to a computer, computer system, or computer network; or
>
> (3) Discloses or takes data, programs, or supporting documentation, residing or existing internal or external to a computer, computer system, or computer network; or
>
> (4) Discloses or takes a password, identifying code, personal identification number, or other confidential information about a computer system or network that is intended to or does control access to the computer system or network;
>
> (5) Accesses a computer, a computer system, or a computer network, and intentionally examines information about another person;
>
> (6) Receives, retains, uses, or discloses any data he knows or believes was obtained in violation of this subsection.

Here, Plaintiffs state a claim. Plaintiffs allege that the Mammoth Defendants accessed one or more of Pipeline's computers. (Doc. 1, ¶ 180.) Drawing reasonable inferences from this allegation, Plaintiffs have alleged they owned a computer(s).[4] Plaintiffs further allege the Mammoth Defendants "disclosed, transmitted misappropriated data, documentation, trade secrets, and proprietary and confidential information wrongfully obtained." While this may be a conclusory allegation, normally ignored by the Court, Plaintiffs also plead with more particularity that Mammoth Defendants were trying to steal assets and brand identities from Pipeline. The factual allegations are notably thin, but nonetheless sufficient to survive a motion to dismiss.

As to Plaintiffs' claims regarding the social media accounts, and other property, of the Company, Mammoth Defendants also argue Plaintiffs have no standing to pursue those claims, namely because Plaintiffs do not have an injury in fact. Mammoth Defendants argue no injury in fact exists because the social media accounts, name, and other corporate assets were owned by the

---

[4] Whether this amounts to a "computer system, computer network, computer program, computer service or data," thus satisfying the requirements of Mo. Res. Stat. § 537.525, may be a question answered through discovery.

Company and not Plaintiffs. However, Plaintiffs plead they own the name, logo, corporate assets, as well as the website and social media accounts of the Company.[5] (Doc. 1.) Plaintiffs also plead that Mammoth Defendants took confidential information, proprietary information, and other communication in an electronic format from the Company and Pipeline. (Doc. 1, ¶ 169.) Therefore, Plaintiffs have standing and have stated a claim under Count XI, and the Court will deny Mammoth Defendants' motions as to Count XI.

## V. Lanham Act (False Designation) (Count XII)

To recover under the Lanham Act, a plaintiff must establish "(1) that it owns a distinctive mark or name; and (2) that defendant's use of a similar mark or name is likely to cause confusion as to the source of the products sold by the defendant." *USA Visionary Concepts, LLC v. Mr Int'l, LLC*, 2009 U.S. Dist. LEXIS 140268 at *6 (W.D. Mo. Nov. 17, 2009); 15 U.S.C. § 1125(a)(1)(A) (2020). "[T]he ultimate issue is whether defendant's design so resembles plaintiff's mark that it is likely to cause confusion among consumers as to whether plaintiff has sponsored, endorsed or is otherwise affiliated with the design." *USA Visionary Concepts, LLC*, 2009 U.S. Dist. LEXIS 140268 at *6-8.

Here, Plaintiffs sufficiently state a claim. Plaintiffs allege they own the Company name and trademarks. (Doc. 1, ¶¶ 198-99.) Mammoth Defendants argue Count XII should be dismissed because the ownership of any name or mark belongs to the Company and not the Plaintiffs. Plaintiffs specifically plead ownership of the names and marks. (*See* Doc. 1, ¶ 75.) While Mammoth Defendants label these allegations as conclusory, ownership itself involves factual questions. Further, Plaintiffs plead they not only own, but also control and created such names and marks. Therefore, Plaintiffs' ownership allegations are sufficiently pled, and, accepted as true for the purposes of this motion, permit the claim to go forward. *See Hamilton v. Palm*, 621 F.3d 816, 819 (8th Cir. 2010) ("Common sense and judicial experience counsel that pleading [employer/independent contractor status] does not require great detail or recitation of all potentially relevant facts in order to put the defendant on notice of a plausible claim."); *Baker v. Big Ox Energy, LLC*, No. 8:18-CV-381, 2019 WL 1506706, at *4 (D. Neb. Apr. 5, 2019) (In explaining the pleading standard under *Iqbal*, the court noted "it is not that the allegations in a

---

[5] While the Court accepts these factual allegations as true for the purposes of the present motions, Plaintiff will have to provide admissible evidence that they, rather than the Company, owned the various intangible property at later stages in the litigation.

9

complaint contain conclusions, it is that the conclusions in the allegation are not supported by a plausible factual base.").

Next, Mammoth Defendants argue Plaintiffs failed to plead an injury that is concrete and particularized. Plaintiffs specifically plead that Mammoth Defendants changed the name of their new venture to "Grinders Crossroads," coopting the name of the Company and creating the likelihood of confusion. More than that though, Plaintiffs pleaded the new name was crafted in a way to deceive customers and that such changes actually did deceive customers. (Doc. 1, ¶¶ 199-200.) Such pleadings are sufficient to allege a concrete and particular injury.[6] Therefore, Plaintiff has stated a claim under Count XII, and the Court will deny Mammoth Defendants' motion on Count XII.

## VI. Trade Secrets and Misappropriation Thereof (Count XIII)

A claim for misappropriation of trade secrets under the Missouri Uniform Trade Secrets Act ("MUTSA") has three elements: "(1) a trade secret exists, (2) the defendant misappropriated the trade secret, and (3) the plaintiff is entitled to either damages or injunctive relief." *Central Trust and Inv. Co. v. Signalpoint Asset Management, LLC*, 422 S.W.3d 312, 320 (Mo. banc 2014). Mammoth Defendants argue Plaintiffs have failed to sufficiently plead any of the above elements. The Court will address each element in turn.

### A. Identification of Trade Secret(s)

First, Mammoth Defendants argue Plaintiff failed to identify any trade secret. A "trade secret" is information or data that: "(a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonably under the circumstances to maintain its secrecy." Mo. Rev. Stat. Section 417.453. The following factors are relevant in the consideration of whether certain information is a trade secret:

> (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3)

---

[6] It should also be noted that the name of the new venture by Defendants was one of the most important issues raised in the motion for temporary restraining order. The Court ordered all parties to cease using the name Crossroads, Crossroads KC, or Crossroads Live in conjunction with the venue, their businesses, or the production of musical events until the final resolution of this case or further order by the Court. The Court permitted Defendants to utilize the term Grinders in naming the venue or producing, promoting, and hosting events at the venue. Within the motion and at the hearing, Plaintiffs presented additional evidence of confusion among the public and consumers.

the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Healthcare Servs. of the Ozarks, Inc. v. Copeland*, 198 S.W.3d 604, 611 (Mo. banc. 2006) (citations omitted).

Plaintiffs allege their trade secrets include business methods, practices, pricing policies, service development data, marketing information, customer lists, customer accounts, and product and service information. (Doc. 1, ¶¶ 209-213.) Plaintiffs further plead that they have "made a substantial investment in money, time, manpower, research, technology and other resources" in creating and developing their trade secrets, and that "such expenses have included the research and development of proprietary and confidential marketing and sales strategies and plans and the implementation of the same, together with proprietary and confidential processes, methods, business practices and pricing policies." (Doc. 1, ¶ 209.) Additionally, Plaintiff pleads they have expended "substantial sums of money in compensating current and former employees to both bring customer leads and customer relationships to Pipeline for the Company's benefit and profit, and to encourage employees to foster and grow Pipeline's customer leads and relationships for the Company's benefit." (*Id.*, ¶ 210.)

Mammoth Defendants argue Plaintiffs' allegations are conclusory. *See STIM, LLC v. Aecom Tech. Servs., Inc.*, No. 15-0772-CV-W-ODS, 2016 WL 1298145, at *4 (W.D. Mo. Apr. 1, 2016); *Trone Health Servs., Inc. v. Express Scripts Holding Co.*, No. 4:18-CV-467 RLW, 2019 WL 1207866, at *8 (E.D. Mo. Mar. 14, 2019). "Although whether a trade secret exists is a legal question, as demonstrated by the relevant factors, it is a legal question that depends upon applicable facts." *InfoDeli, LLC v. W. Robidoux, Inc.*, No. 4:15-CV-00364-BCW, 2016 WL 6921624, at *5 (W.D. Mo. Aug. 26, 2016); *see also Flowshare, LLC v. TNS, US, LLC*, No. 4:16-CV-00300-JAR, 2017 WL 3174321, at *5 (E.D. Mo. July 26, 2017) (denying motion to dismiss even though trade secret allegations were "broad and general"); *Noble & Assocs. v. Edwards*, 2007 U.S. Dist. LEXIS 78014 at *6-7 (W.D. Mo. Oct. 19, 2007); *Porters Bldg. Centers, Inc. v. Sprint Lumber*, No. 16-06055-CV-SJ-ODS, 2017 WL 4413288, at *5 (W.D. Mo. Oct. 2, 2017) (denying summary judgment because there was a genuine issue of fact as to whether plaintiff's customer lists, financial data, market share, inventory turnover, material lists for customers' jobs, and internal

operating procedures were a trade secrets). Based on Plaintiffs' allegations, they have sufficiently pleaded the existence of a trade secret(s).

### B. Misappropriation

Next, Mammoth Defendants argue Plaintiffs failed to adequately plead misappropriation. Misappropriation of a trade secret occurs either "when one acquires a trade secret through 'improper means,' that is, through such means as theft, bribery or inducing one to breach a duty of secrecy . . . or when one disclosing a trade secret without consent . . . knew or had reason to know that the secret was 'acquired under circumstances giving rise to a duty to maintain its secrecy or limits its use.'" *BP Chemicals Ltd. v. Jiangsu Sopo Corp.*, 285 F.3d 677, 683 (8th Cir. 2002) (citing *H & R Block E. Tax Servs., Inc. v. Enchura*, 122 F. Supp. 2d 1067, 1074 (W.D. Mo. 2000)). Here, Plaintiffs have pleaded Mammoth Defendants acted in concert with S&A and Rumaner to take the trade secretes of Plaintiff, which they then used to their financial benefit. Plaintiffs adequately pleaded misappropriation.

### C. Damages

Finally, Mammoth Defendants argue Plaintiffs alleged nothing more than speculative damages. Under Mo. Rev. Stat. Section 417.453(4)(a),

> A plaintiff whose trade secret has been misappropriated may recover "both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss." Mo. Rev. Stat. § 417.457.1. . . . However, in place of such a measure, "the damage caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's disclosure or use of a trade secret."

*Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC*, No. 08-0840-CV-W-ODS, 2012 WL 3047211, at *2 (W.D. Mo. July 25, 2012) (emphasis removed). Plaintiffs plead they suffered actual losses. Even if this allegation were insufficient, Plaintiffs could opt for the royalty value of their trade secrets. *Id.* Therefore, Plaintiffs have stated a claim under Count XIII, and the Court will deny Mammoth Defendants' motion to dismiss on this point.

## VII. Civil Conspiracy (Count VIII)

To establish a claim of civil conspiracy, Plaintiffs must prove "(1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and (5) the plaintiff was thereby injured." *Higgins v. Ferrari*, 474 S.W.3d 630, 642 (Mo. Ct. App. 2015) (internal quotations and citations omitted). Mammoth

12

Defendants argue Plaintiffs' civil conspiracy claim fails because they fail to state a claim on any other count and Plaintiffs' allegations are conclusory.

The Court can dispense with Mammoth Defendants' first argument as the Court holds above that Plaintiffs have stated a claim on some counts. As to the second argument, Plaintiffs alleged in their Complaint that Mammoth conspired with S&A and Rumaner to produce and operate concerts at the same venue for Rumaner's own personal profit, to replace Pipeline in the management of the Company, and to divert trade secrets away from Pipeline. (Doc. 1 at ¶¶ 2, 67, 77, 106). Plaintiffs supported their allegations of conspiracy by explaining that by virtue of its membership in the Company, S&A had access to Pipeline's proprietary business information and shared it with Mammoth. (Doc. 1 at ¶¶ 72-78). Further, Plaintiffs allege that Mammoth Defendants encouraged and actively worked with S&A to "divert the Company's and Pipeline's business, artists, clients, prospects, confidential and proprietary information, data and trade secrets away from them and to their new venture." (*Id.* at ¶ 77.) Plaintiffs' Complaint contains supportive facts and used more than the conclusory statements. Therefore, the Court will deny Mammoth Defendants motion as to count VIII.

### VIII.    Injunctive Relief (Count XIV)

Finally, Mammoth Defendants argue Count XIV should be dismissed because there is no cause of action for injunctive relief. "[I]njunctive relief is a remedy and not an independent cause of action. *Wholesale All., LLC v. Express Scripts, Inc.*, 366 F. Supp. 3d 1069, 1082 (E.D. Mo. 2019). Therefore, while Plaintiffs may have injunctive relief as a potential remedy, it is not an independent cause of action, and the Court will dismiss Count XIV.

### Conclusion

Accordingly, and after careful consideration, the motions (Docs. 36, 38) are **GRANTED in part and DENIED in part**. Specifically, it is ordered:

1. Mammoth Defendants' motion to dismiss Count VII is **DENIED**.
2. Mammoth Defendants' motion to dismiss Count IX is **GRANTED** and Count IX is **DISMISSED** without prejudice.
3. Mammoth Defendants' motion to dismiss Count X is **GRANTED** and Count X is **DISMISSED** without prejudice.
4. Mammoth Defendants' motion to dismiss Count XI is **DENIED**.
5. Mammoth Defendants' motion to dismiss Count XII is **DENIED**.

6. Mammoth Defendants' motion to dismiss Count XIII is **DENIED**.
7. Mammoth Defendants' motion to dismiss Count VIII is **DENIED**.
8. Mammoth Defendants' motion to dismiss Count XIV is **GRANTED** and Plaintiffs' Count XIV is **DISMISSED** with prejudice.

**IT IS SO ORDERED**.

    s/ Roseann A. Ketchmark
    ROSEANN A. KETCHMARK, JUDGE
    UNITED STATES DISTRICT COURT

DATED: August 5, 2020