IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| PIPELINE PRODUCTIONS, INC., MICHAEL EDMONDSON, BRETT MOSIMAN, PLT, LLC, MIDWEST PRODUCTION SERVICES, LLC, | ) ) ) ) ) |
| Plaintiffs, | ) Case No. 4:20-00130-CV-RK ) |
| v. | ) ) |
| S&A PIZZA, INC., JEFFREY "STRETCH" RUMANER, CROSSROADS LIVE, LLC, MAMMOTH, INC., JEFF FORTIER, JOSH HUNT, | ) ) ) ) ) |
| Defendants. | ) |

**ORDER**

Now before the Court is Plaintiffs' motion for leave to amend their complaint and add new claims and parties. (Doc. 127.) Defendants oppose Plaintiffs' motion in part. (Docs. 132 & 133.)[1] After careful consideration, Plaintiffs' motion is **GRANTED in part and DENIED in part.**

**Background and Procedural Posture**

This lawsuit is a business dispute that centers on the ownership, marketing, and use of a local Kansas City concert and restaurant venue in the downtown area of Kansas City, Missouri. Plaintiffs are two individuals, (1) Brett Mosiman and (2) Michael Edmonson, and several entities owned by Mosiman – (1) Pipeline Productions, Inc. ("Pipeline"), (2) PLT, LLC, and (3) Midwest Production Services, LLC (collectively, "Plaintiffs"). Defendants include (1) Jeffrey "Stretch" Rumaner, (2) S&A Pizza, Inc., and (3) Crossroads Live, LLC ("the Company") (collectively, "Crossroads Defendants"), as well as (4) Mammoth, Inc. ("Mammoth"), (5) Josh Hunt, and (6) Jeff Fortier (collectively, "Mammoth Defendants").

Plaintiffs filed this lawsuit against Defendants on February 24, 2020. (Doc. 1.) Plaintiffs asserted fifteen counts against various Defendants.

---

[1] The Crossroads Defendants filed their opposition to the proposed amended complaint on August 10, 2021. (Doc. 132.) The Mammoth Defendants filed their opposition to the proposed amended complaint, concurrently, on August 10, 2021. (Doc. 133.) In their motion, the Crossroads Defendants joined and adopted the Mammoth Defendants' motion. Similarly, the Mammoth Defendants joined and adopted the Crossroads Defendants' motion.

Ct 1 – Breach of Contract (All Plaintiffs v. S&A and Company)
Ct 2 – Breach of Contract (Pipeline and Edmondson v. S&A)
Ct 3 – Breach of Fiduciary Duty (All Plaintiffs v. S&A and Rumaner)
Ct 4 – Breach of Fiduciary Duty (Pipeline and Edmonson v. S&A and Rumaner)
Ct 5 – Unjust Enrichment (All Plaintiffs v. S&A and Rumaner)
Ct 6 - Tortious Interference (All Plaintiffs v. S&A and Rumaner)
Ct 7 – Tortious Interference (All Plaintiffs v. Mammoth, Fortier, and Hunt)
Ct 8 – Civil Conspiracy (All Plaintiffs v. S&A, Rumaner, Mammoth, Fortier, and Hunt)
Ct 9 – Stored Communications Act (Pipeline v. S&A, Rumaner, Mammoth, Fortier, and Hunt)
Ct 10 – Computer Fraud and Abuse Act ("CFAA") (Pipeline v. S&A, Rumaner, Mammoth, Fortier, and Hunt)
Ct 11 – Computer Tampering (Pipeline v. S&A, Rumaner, Mammoth, Fortier, and Hunt)
Ct 12 – Lanham Act (Pipeline v. S&A, Rumaner, Mammoth, Fortier, and Hunt)
Ct 13 – Trade Secrets (Pipeline v. S&A, Rumaner, Mammoth, Fortier, and Hunt)
Ct 14 – Injunctive Relief (All Plaintiffs v. All Defendants)
Ct 15 – Dissolution (Pipeline and Edmondson v. S&A and Company)

Plaintiff also filed a motion for temporary restraining order and preliminary injunction on March 12, 2020. (Doc. 7.)

On May 5, 2020, the Court granted in part Plaintiffs' motion for a temporary restraining order and preliminary injunction. Specifically, the Court ordered that no party may use the name "Crossroads," "Crossroads KC," or "Crossroads Live" relating to the venue, their businesses, or the production of events until the case is resolved, or until further order of the Court. The order did not prohibit Defendants from using the term "Grinders" concerning the venue and its use of the venue. (Doc. 58.)

Defendant Mammoth filed a motion to dismiss all claims brought against Mammoth (Counts 7 – 14) for failure to state a claim on April 15, 2020. (Doc. 36.) Also on April 15, 2020, Defendants Hunt and Fortier filed a motion to dismiss all claims brought against Hunt and Fortier (Counts 7 – 14) for failure to state a claim and lack of Article III standing to sue. (Doc. 38.)

On August 5, 2020, the Court entered an order granting in part and denying in part Defendants' motions to dismiss. (Doc. 98.) In particular, the Court granted the motions to dismiss as to Count 9 (Stored Communications Act) without prejudice; Count 10 (CFAA) without prejudice; and Count 14 (injunctive relief) with prejudice. The Count denied the motions to dismiss in all other respects.

The parties began discovery in July 2020, although the bulk of discovery (production of tens of thousands of pages of documents) did not occur until early- and mid- 2021. The initial scheduling order set the trial on July 6, 2021. (Doc. 106.) After the parties filed a joint motion to amend the scheduling order, the Court amended the order, but did not alter the July 6, 2021, trial setting. (Doc. 110.) After the parties filed a second joint motion to amend the scheduling order, the Court issued a Second Amended Scheduling Order continuing the trial to November 15, 2021. (Doc. 118.) After the parties filed a third joint motion to amend the scheduling order, the Court issued a Third Amended Scheduling Order continuing the trial to April 18, 2022. (Doc. 121.) After the Plaintiffs filed a fourth, uncontested motion to amend the scheduling order, the Court issued a Fourth Amended Scheduling Order, but did not alter the previously set April 18, 2022, trial date. (Doc. 124.) Under the Fourth Amended Scheduling Order, the deadline for joinder of parties and amendment of pleadings was July 23, 2021, and the discovery deadline was extended to September 24, 2021.

Plaintiffs filed the instant motion to amend their complaint and add parties on July 27, 2021. (Doc. 127.)[2] Plaintiffs seek leave to amend their complaint to add two parties, include additional factual allegations, and assert three new claims. In support of their motion, Plaintiffs state that the voluminous discovery that has been completed thus far, including tens of thousands of pages of documents, revealed the involvement of Jacki Becker and Up to Eleven Productions ("Eleven"), an agent of Mammoth, Inc., in the underlying business dispute. Plaintiffs state that Becker is the general manager of GrindersKC and principal of Eleven. Plaintiffs state that prior to discovery, "they were unaware of this information, which was solely within the Defendants' possession and control," and that "[o]nce Plaintiffs were able to review and analyze the tens of thousands of documents produced in this case, they quickly filed" the instant motion for leave to amend. (Doc. 127 at 9.)

---

[2] Plaintiffs originally filed the motion to amend complaint and add parties on July 23, 2021, along with a motion for leave to file the proposed amended complaint under seal. (Docs. 125 & 126.) The Court requested Plaintiffs refile their motion attaching the proposed complaint as an unsealed exhibit (and to indicate whether the parties opposed the motion). Plaintiffs did so on July 27, 2021. On July 28, 2021, the Court entered an order finding as moot Plaintiffs' original motion to amend complaint and add parties and Plaintiffs' motion for leave to file under seal. In opposing Plaintiffs' motion to amend complaint and add parties, Defendants do not argue that Plaintiffs' motion is untimely under the Fourth Amended Scheduling Order. Under these circumstances, the Court considers Plaintiffs' motion to amend complaint and add parties as timely filed.

3

Plaintiffs seek to add new causes of action against various Defendants including defamation, tortious interference with a business expectancy, and common law unfair competition. Plaintiffs re-assert their claim under the Lanham Act as two separate causes of action (false association and false advertising) and re-assert their CFAA claim with additional factual allegations. Plaintiffs do not reassert their original claims brought under the Stored Communications Act or for injunctive relief, both of which were previously dismissed by the Court in Doc. 98.

Plaintiffs' Amended Complaint asserts the following sixteen counts against various Defendants:

> Ct 1 – Breach of Contract (All Plaintiffs v. S&A and Company)
> Ct 2 – Breach of Contract (Pipeline and Edmondson v. S&A)
> Ct 3 – Breach of Fiduciary Duty (All Plaintiffs v. S&A and Rumaner)
> Ct 4 – Unjust Enrichment (Pipeline, Edmondson, and Mosiman v. S&A and Rumaner)
> Ct 5 – Tortious Interference (All Plaintiffs v. S&A and Rumaner)
> Ct 6 – Tortious Interference (All Plaintiffs v. Mammoth, Fortier, Hunt, Becker and Eleven)
> Ct 7 – Tortious Interference (All Plaintiffs v. S&A, Rumaner, Mammoth, Fortier, Hunt, Becker, and Eleven)
> Ct 8 – Defamation (Pipeline, Mosiman, and Ticketing v. S&A, Rumaner, Mammoth, Fortier, Hunt, Becker, and Eleven)
> Ct 9 – Civil Conspiracy (All Plaintiffs v. S&A, Rumaner, Mammoth, Fortier, Hunt, Becker, and Eleven)
> Ct 10 – CFAA (Pipeline v. S&A, Rumaner, Mammoth, Fortier, Hunt, Becker, and Eleven)
> Ct 11 – Computer Tampering (Pipeline v. S&A, Rumaner, Mammoth, Fortier, Hunt, Becker, and Eleven)
> Ct 12 – Lanham Act – False Association (Pipeline v. S&A, Rumaner, Mammoth, Fortier, Hunt, Becker, and Eleven)
> Ct 13 – Lanham Act – False Advertising (Pipeline v. S&A, Rumaner, Mammoth, Fortier, Hunt, Becker, and Eleven)
> Ct 14 – Unfair Competition (Pipeline v. S&A, Rumaner, Mammoth, Fortier, Hunt, Becker, and Eleven)
> Ct 15 – Trade Secrets (Pipeline v. S&A, Rumaner, Mammoth, Fortier, Hunt, Becker, and Eleven)
> Ct 16 – Dissolution (Pipeline and Edmondson v. S&A and Company)

**Standard of Review**

A district court should freely give leave to a party to amend its pleadings when justice so requires, Fed. R. Civ. P. 15(a). However, the Court may properly deny a party's motion to amend

its complaint for reasons "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Delay alone is not a reason in and of itself to deny leave to amend; the delay must have resulted in unfair prejudice to the party opposing amendment." *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001) (quoting *Sanders v. Clemco Indus.*, 823 F.2d 214, 217 (8th Cir. 1987)). "The burden of proof of prejudice is on the party opposing amendment." *Sanders v. Clemco Indus.*, 823 F.2d 214, 217 (8th Cir. 1987).

### Discussion

In Doc. 132, the Defendants oppose the proposed amended complaint on three grounds, (1) adding Becker and Eleven would significantly delay the case and unfairly prejudice the Defendant, (2) adding Becker and Eleven is improper under the rules because it would cause delay and unfair prejudice, and (3) the renewed CFAA claim (Count 10) is futile and cannot survive a motion to dismiss.

In Doc. 133, the Defendants oppose the renewed CFAA claim (Count 10) in the proposed amended complaint, asserting the renewed CFAA claim (1) fails to sufficiently allege prohibited computer access by the Defendants, and (2) fails to sufficiently plead a cognizable loss under the statute.

#### 1. Delay and Undue Prejudice, generally

Defendants argue that allowing Plaintiffs to amend their complaint would delay the litigation into the 2022 concert season thus causing an economic hardship for Defendants. Defendants assert such delay and hardship would unfairly prejudice them. Specifically, Defendants complain that allowing Plaintiffs to amend their complaint to add Becker and Eleven (1) would require significant time for defense counsel for Becker and Eleven to "be brought up to speed" with the case, thus delaying the trial "at least several months," (2) would require Defendants to "revise" their discovery responses, and (3) would unduly prejudice Defendants since the delay would extend the dispute through the 2022 concert season. (Doc. 132.)

As to Defendants' argument that adding more defendants will cause a trial delay, Plaintiffs' claims against Becker and Eleven only came to light upon Plaintiffs' review of the discovery that Defendants recently provided to Plaintiffs. Additionally, the Defendants have jointly requested, on four separate occasions, for the deadlines and/or the trial setting to be extended. (*See* Docs.

110, 118, 121 & 124.) This lawsuit was filed on February 24, 2020, and under the circumstances of this case, a trial continuance of "at least several months" is insufficient to establish an undue prejudice to the Defendants.

As to Defendants' argument regarding discovery, Defendants argue the amended complaint would require Defendants to revise their discovery responses. Defendants assert they would need to re-review voluminous documents as well as search and review additional documents. A need to revise discovery responses, in the context of this case, is insufficient to establish an undue burden for Defendants.

As to Defendants' economic hardship argument, while the Court recognizes this case does involve a central aspect of the parties' business(es) and the venue itself, Defendants are permitted, under the limited preliminary injunction and temporary restraining order, to use the term "Grinders" in relation to the venue and events they may hold at the venue. Simply put, Defendants have not established the amendments would result in an undue delay, a discovery burden, or an economic hardship, cumulating to cause an unfair prejudice to Defendants.

### 2. Addition of Defendants Becker and Eleven

Defendants also argue the delay and hardship caused by the joinder of Becker and Eleven is improper under Rule 19 (required joinder of parties) and Rule 20 (permissive joinder of parties) of the Federal Rules of Civil Procedure.

Rule 20(a)(2) permits joinder of defendants if:

(A) any right to relief is asserted against them . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all defendants will arise in the action.

Defendants do not attempt to argue that Plaintiffs' claims against Becker or Eleven fail the "two specific requisites to the joinder of parties." *Mosley v. Gen'l Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) (that is, the right to relief arises from the same transaction, occurrence, or series thereof; and a common question of law and fact as to all defendants will arise in the action). Defendants argue only that joinder is improper because it will cause delay and unfair prejudice. "The primary purpose of Rule 20 'is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits.'" *Robinson v. Midwest Div.-RMC*, LLC, No. 4:19-CV-0934-SRB, 2020 WL 2151880, at *1 (W.D. Mo. May 5, 2020) (citation omitted). "Courts strongly encourage joinder and favor the broadest scope of action consistent

with fairness to the parties." *Miller v. Cottrell, Inc.*, No. 06-0141-CV-W-NKL, 2006 WL 1313367, at *4 (W.D. Mo. May 12, 2006) (citation and quotation marks omitted).

For the reasons previously stated above, the Court does not find the addition of Becker and Eleven will cause undue delay and prejudice to justify precluding their joinder. The Court further finds the addition of Becker and Eleven is permissible under the requirements of Rule 20, is consistent with fairness to the parties, and will prevent multiple common lawsuits.

### 3. Re-Assertion of CFAA Cause of Action

Finally, Defendants argue that Pipeline's renewed claim alleging a violation of the CFAA (18 U.S.C. § 1030) is futile because Pipeline has failed to satisfy its pleading burden. The Court previously dismissed Pipeline's CFAA claim, finding that Pipeline failed to plead "more than . . . bare, conclusory allegations, which amount to mere recitation of the elements outlined in § 1030(a)(4)." (Doc. 98 at 7.) "A motion for leave to amend should be denied on the basis of futility where the amended complaint could not withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Bohanna v. Hartford Life & Acc. Ins. Co.*, 848 F. Supp. 2d 1009, 1015 (W.D. Mo. 2012) (citing *Zutz v. Nelson*, 601 F.3d 842, 850-51 (8th Cir. 2010)).

> In the proposed amended complaint Pipeline alleges that Defendants:
>
> acting together, knowingly and with intent to defraud Pipeline and the Company, accessed one or more protected Pipeline computers without authorization, or exceeded authorized access thereto, and by means of such conduct furthered the intended fraud through their misappropriation of Pipeline's confidential and proprietary information and trade secrets and diversion of Pipeline's customers and prospective customers for their own personal profit.

Further, Pipeline alleges the only authorized access S&A and Rumaner had to Pipeline's computers and confidential, proprietary, and trade secrets information was "limited to that which was necessary to run the Company" and that such authorization ended when S&A and Rumaner "cancelled the business." Pipeline alleges that Defendants "without authorization, accessed, without limitation, Pipeline's computers, social network and websites, lists of sponsorships and corresponding sponsorship documents, profits and loss statements, show history, customer database, and e-mail lists." Pipeline avers "[a]s a direct and proximate cause of these actions, Pipeline and the Company have suffered loss during a one-year period aggregating in excess of $5,000.00 and to be determined after discovery and before trial."

7

Section 1030(g) establishes a private right of action for "[a]ny person who suffers damage or loss by reason of a violation of this section" so long as the violation involved conduct, as applicable here, that caused "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." § 1030(g) & 1030(c)(4)(A)(i)(I). Section 1030(a)(4) makes it unlawful to:

> knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period.

Thus, a CFAA claim under § 1030(g) requires a party to plead facts that, if true, establish "(1) the elements of the particular substantive (criminal) offense under subsection 1030(a); (2) the plaintiff suffered 'damage or loss' as a result of such a violation; and (3) one of the five types of conduct specified under subsection (c)(4)(A)(i)." *Gridiron Mgmt. Grp. LLC v. Wranglers*, No. 8:12CV3128, 2012 WL 5187839, at *10 (D. Neb. Oct. 18, 2012) (citation and quotation marks omitted).

Section 1030(e)(8) defines "damage" as any impairment to the integrity or availability of data, a program, a system, or information." Section 1030(e)(11) defines "loss" as:

> any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

Here, then, Pipeline must plead facts that, if true, would be sufficient to establish:

(1) Defendants knowingly and with intent to defraud, accessed a protected computer without authorization (or exceeded their authorization) and by means of such conduct furthered the intended fraud and obtained anything of value (unless the object of the fraud and thing obtained consisted only of the use of the computer and value of such use is less than $5,000 in a one-year period);

(2) Pipeline suffered "damage or loss," that is (a) "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense" or (b) "any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service" or (c) "impairment to the integrity or availability of data, a program, a system, or information; and

8

(3) as relevant here, "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value."

Defendants argue that Pipeline has failed to adequately plead damage or loss to sustain a CFAA claim. The Court agrees. "The weight of relevant authority restricts the CFAA 'loss' requirement to actual computer impairment." *Burnett v. Grundy*, No. 14-00301-CV-W-DW, 2014 WL 12616808, at *2 (W.D. Mo. Oct. 28, 2014) (collecting cases). In other words, an allegation of economic harm or financial injury "not relate[d] to either responding to the offense [the unauthorized access] or consequential damages due to interruption of service" are not sufficient to withstand a Rule 12(b)(6) motion against a CFAA claim. *Dewitt Ins., Inc. v. Horton*, No. 4:13-CV-2585 JAR, 2014 WL 2208073, at *3-4 (E.D. Mo. May 28, 2014); *see RemedPar, Inc. v. AllParts Med., LLC*, 683 F. Supp. 2d 605, 614 (M.D. Tenn. Jan. 4, 2010) (loss alleged based on misappropriation of confidential, trade-secret information damaging plaintiff's business interests not sufficient to plead "loss" under CFAA claim); *id.* at 614-15 (CFAA claim does not rest on allegations of "injuries associated with any trade-secrets misappropriation action" because they are "not related to analyzing or restoring the system to its previous condition or to any interruption in service") (collecting cases); *BCRS1, LLC v. Unger*, No. 20-cv-4246 (BMC), 2021 WL 3667094, at * (E.D.N.Y. Aug. 18, 2021) (the term "loss" in CFAA context "does not include damage to . . . lost revenue due to unfair competition") (collecting cases); *but see Res. Ctr. for Indep. Living, Inc. v. Ability Res., Inc.*, 534 F. Supp. 2d 1204, 1210-11 (D. Kan. 2008) (holding that allegation of loss from unauthorized access by defendant of "confidential and proprietary information for the benefit of defendants' competing enterprise" stated cause of action under CFAA).

Indeed, as the Supreme Court of the United States recently explained in *Van Buren v. United States*, 141 S. Ct. 1648 (2021) (albeit in a case concerning the criminal aspect of CFAA rather than a civil action):

> The term "loss" likewise relates to costs caused by harm to computer data, programs, systems, or information services. The statutory definitions of "damage" and "loss" thus focus on technological harms – such as the corruption of files – of the type unauthorized users cause to computer systems and data. . . . The terms' definitions are ill fitted, however, to remediating "misuse" of sensitive information that employees may permissibly access using their computers [but for an unauthorized or non-work-related purpose].

*Id.* at 1559-60 (citation omitted).

The bulk of Pipeline's allegations regarding its CFAA claim concern Defendants' alleged unauthorized and improper use of proprietary and company information for Defendants' own benefit and to "inflict economic harm on Pipeline" as a competitor of Mammoth Defendants and Eleven. As explained above, these allegations are insufficient to adequately plead loss required to state a claim under the CFAA. Additionally, while the amended complaint does include allegations concerning various attempts by Defendants (including Becker) to access and take control over the Company's social media accounts and website, Pipeline does not plead any plausible facts establishing they suffered any relevant kind of loss or damage. For example, Pipeline pleads no facts to plausibly show it spent any funds, let alone more than $5,000 to respond to or restore anything concerning the social media accounts various Defendants tried to access. Pipeline does allege that on February 10, 2020, Defendants (through a third party) took control of the Company's Snapchat, Instagram, and Twitter accounts. Pipeline also alleges, however, that two hours later Pipeline had re-secured the social media accounts. Concerning the website, Pipeline does not allege any named Defendants took any documents, images, or text from the website. Rather, Pipeline alleges a third party took images and text from the website, and then provided the images and text to Defendants for use on their website. Pipeline alleges no cognizable loss as to the website or social media account other than economic harm from unfair competition and a two-hour period when Defendants "controlled" various social media accounts. Pipeline's allegations do not include any factual support from which, if true, the Court can reasonably infer Pipeline incurred costs exceeding $5,000 in responding to any unauthorized access or intrusion or related to costs or other damages that were incurred because of an "interruption of service." Mere recitation of the elements is insufficient to plead "loss." Thus, taking the facts pleaded as true, the Count finds Pipeline fails to allege unauthorized use and plead "loss" to state a claim under CFAA sufficiently to withstand a Rule 12(b)(6) motion to dismiss the claim.

Accordingly, because the Court finds Pipeline's CFAA claim asserted in its amended motion is futile on the ground that Pipeline failed to state a claim that would withstand a Rule 12(b)(6) motion to dismiss, Plaintiff's motion to amend and add parties is **DENIED** as to Count 10 of the proposed amended complaint.

**Conclusion**

Plaintiffs' motion to amend and add parties (Doc. 127) is **DENIED** as to Count 10 of the amended complaint asserting a CFAA claim under 18 U.S.C. § 1030, and is **GRANTED** in all other respects. Plaintiffs shall file their Amended Complaint, as attached to their motion (Doc. 127-1) (except for Count 10 asserting a CFAA claim) within five (5) days of the date of this Order.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark<br>
ROSEANN A. KETCHMARK, JUDGE<br>
UNITED STATES DISTRICT COURT

DATED: October 14, 2021